IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00291-MSK-MEH

KEVIN AGUILAR,

        Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY and
JANET NAPOLITANO,[1] Secretary, Department of Homeland Security

        Defendants.

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING ALL CLAIMS**

---

THIS MATTER comes before the Court on Defendant Janet Napolitano's Motion for

Summary Judgment **(#41)** – ostensibly brought in her official capacity on behalf of the

Department of Homeland Security ("DHS"), a Response **(#42)** and a Reply **(#43)**.  Having

---

[1]  On January 20, 2009, Janet Napolitano succeeded Michael Chertoff as the Secretary of the Department of Homeland Security.  Federal Rule of Civil Procedure 25(d), which provides as follows:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.  The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Accordingly, pursuant to Rule 25, Ms. Napolitano has automatically been substituted for Mr. Chertoff.

considered the record and finding no need for further argument or presentation of evidence, the Court finds and concludes as follows.

## I. JURISDICTION

The Court exercises jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

## II. ISSUE PRESENTED

This case arises out of Plaintiff Kevin M. Aguilar's employment with the DHS. Mr. Aguilar brought a complaint in this Court alleging four claims for race-based and religion-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). In the motion now before the Court, Defendant Secretary of the DHS ("Secretary") seeks summary judgment on three of Mr. Aguilar's claims.

## III. MATERIAL FACTS

Based upon the record[2], the Court summarizes the facts, construing them most favorably to the non-movant, Mr. Aguilar.

Mr. Aguilar, who is Latino and Catholic, was employed as a special agent with the United States Customs Service (now known as Immigration and Customs Enforcement, or "ICE," an arm of the DHS) in Denver, Colorado when Arapahoe County Sheriff's deputies were

---

[2] Mr. Aguilar's summary judgment response does not comply with the Court's formatting requirements. *See* MSK Practice Standards (Civil), §V.I.3.2. Rather than responding to the arguments raised by focusing upon the claims and pertinent elements and identifying the evidence to an element, Mr. Aguilar combined arguments, facts and evidence in a consolidated narrative. More importantly, he mixed facts supported by citation to the record with unsupported, conclusory assertions. Under these circumstances, the Court has focused upon only those assertions of fact for which some reference to the factual record has been made. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Although there might be supporting evidence in uncited portions of the record, it would be an abrogation of the Court's duty of impartiality and well outside the interests of judicial economy to comb the record in search of evidence to support a party's case when Mr. Aguilar has failed to do so. *Id.*

called to his residence to investigate a domestic violence complaint.  The deputies spoke with interested parties, assessed the facts of the matter, and knocked on Mr. Aguilar's door while announcing that they were with the Sheriff's department.  The deputies reported that Mr. Aguilar did not respond to their knocking and announcement of their presence, but that they heard noises coming from inside the residence, witnessed light appear and disappear from the residential door's peephole, and heard the click of a privacy lock that was accessible only from the inside of the residence door.  The deputies surmised that Mr. Aguilar had barricaded himself in his residence.  Knowing that Mr. Aguilar had been issued a firearm and had been trained the use of same, they considered him armed and dangerous.  As a result, the deputies decided to make a "tactical entry" into Mr. Aguilar's residence; they broke down his door to do so.[3]

The deputies found Mr. Aguilar lying on his bed.  They arrested him and charged him with assault, false imprisonment, menacing, and harassment.

Mr. Aguilar went to trial before a jury in Colorado state court, and was acquitted on all charges.  At trial, Mr. Aguilar claimed that he did not hear the deputies knocking at or breaking down his door because he had been asleep.  He claimed that the first time he became aware of their presence was when he woke to find the deputies at his bedside.  The evidence presented at trial included Mr. Aguilar's cell phone records, which showed that he made a short call at 8:30 p.m. - after the Sheriff's deputies had arrived at the scene.

Following Mr. Aguilar's trial, ICE's office of internal affairs investigated the matter.  ICE agents interviewed Mr. Aguilar about the events on the evening in question.  When asked

---

[3]  The parties agree that Mr. Aguilar had sufficient training to recognize the inherent dangers of residential entry by the police.  Mr. Aguilar concedes that the deputies' concerns were valid.

about the inconsistencies between the deputies' accounts of the events and his own, Mr. Aguilar

told the agents that he believed that the deputies' accounts were likely due to racial

discrimination.

At the conclusion of the investigation, the ICE agents compiled a report that contained

four conclusions: (1) that Mr. Aguilar had made material false statements during the course of

the investigation; (2) that Mr. Aguilar had perjured himself during the trial; (3) that Mr. Aguilar

had engaged in conduct prejudicial to the government; and (4) that Mr. Aguilar had not engaged

in domestic violence.  On March 17, 2004, ICE agents recommended that Mr. Aguilar be

terminated because he had made false statements and behaved in a manner contrary to the

interests of the government. On March 31, 2004, Mr. Aguilar filed a complaint with the Equal

Employment Opportunity Commission ("EEOC"), alleging that he had been subject to

discrimination based on his race and religion and based on the fact that he had been arrested.

On August 27, 2004, ICE terminated Mr. Aguilar's employment.  On November 9, 2004,

Mr. Aguilar filed a second complaint with the EEOC, asserting that he had been discriminated

against on the bases of race, religion, age, national origin, and the fact that he had been arrested.

He also claimed to have been subject to disparate treatment, wrongful termination, retaliation,

and a hostile work environment.  How the EEOC resolved Mr. Aguilar's case and whether he

received a right-to sue letter is unclear.

On August 28, 2007, Mr. Aguilar filed a complaint in the United States District Court for

the Western District of Texas.[4]  Mr. Aguilar initially asserted claims for discrimination based on

race and religion, disparate treatment based on race, and retaliation based on the complaints he

_____

[4]  The case was transferred to this Court in February 2008 (**#1**).

filed with the EEOC.  However, in the proposed final pretrial order, Mr. Aguilar stated that he intended only to pursue his claim for unlawful racial discrimination.

Ordinarily, courts do not consider claims, issues, defenses, or theories of damages not contained in the pretrial order, even if they appeared in the complaint.  *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).  Therefore, the Court finds that Mr. Aguilar has abandoned his claims for religious discrimination, retaliation and disparate treatment.  They will be dismissed.

In the motion before the Court, the Secretary seeks summary judgment on three of Mr. Aguilar's claims.  However because Mr. Aguilar has voluntarily abandoned all claims except for unlawful race discrimination, that is the only claim that will be addressed.

## IV.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it may point to an absence of sufficient evidence to establish the claim that the respondent is obligated to prove. The burden is then on the respondent to come forward with sufficient competent evidence to establish a *prima facie* claim or defense, showing a trial is required. Fed. R. Civ. P. 56(e)(2). A party responding to a motion for summary judgment may not simply rest on the pleadings or on factual assertions unsupported by evidence. Fed. R. Civ. P. 56(e)(2); *Bancoklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). The party must support its assertions of fact with affidavits, deposition transcripts, or specific exhibits evidencing the alleged fact. *Adler*, 144 F.3d at 671. If the respondent fails to produce sufficient competent evidence to establish its claim, the claim must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V. ANALYSIS

Title VII prohibits an employer from discriminating against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Courts analyze claims arising under Title VII using the familiar *McDonnell-Douglas* burden-shifting framework. *Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1134 (10th Cir. 2004). Under this framework, Mr. Aguilar must establish a *prima facie* case of race discrimination by showing: (i) that he is a member of a protected class; (ii) that he held the minimum qualifications for the position he occupied; (iii) that he suffered an adverse employment action; and (iv) that the adverse action

occurred in circumstances giving rise to an inference of discrimination. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 & n.5 (10th Cir. 2005). If Mr. Aguilar succeeds in establishing a *prima facie* case, the burden shifts to the Secretary to articulate a legitimate, non-discriminatory reason for its employment action. If the Secretary successfully presents such a reason, Mr. Aguilar must demonstrate that the Secretary's proffered reasons were merely pretext for unlawful discrimination.

The Secretary argues that Mr. Aguilar cannot establish a *prima facie* case as to either his qualifications for the job or that his termination occurred under circumstances giving rise to an inference of discrimination or, if he can, he cannot establish that the DHS's reason for terminating his employment were merely pretextual.

It is not necessary to reach the issue of pretext because there is insufficient evidence to raise a triable issue as to the fourth element of Mr. Aguilar's *prima facie* claim. To make an adequate showing as to this element, Mr. Aguilar must show that the adverse employment action occurred under circumstances giving rise to an inference of racial discrimination in one of three ways: (1) that similarly-situated non-minority employees were treated more favorably, (2) that the decision-maker made discriminatory actions or remarks, or (3) that a pattern of events leading up to the adverse action is probative of racial discrimination. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).

Mr. Aguilar has not identified competent evidence that, if taken as true, would establish circumstances giving rise to an inference of discrimination by any of the three means available to him. In his brief, Mr. Aguilar argues that the DHS and ICE have treated several similarly-situated individuals differently, but he identifies no evidence to support this conclusion. To the

contrary, he candidly admits that this conclusion "has not been, to date, supported by the evidence."  He offers no evidence of racially discriminatory actions remarks made by ICE or DHS officials.  With regard to a "pattern of events", Mr. Aguilar contends that the DHS and ICE discriminated against him by accepting the Arapahoe County Sheriff's deputies' account of the events rather than his explanation.  He characterizes the deputies' account as racially motivated, but he offers no evidence that the deputies were racially biased or that their recollections of the events were motivated by racial animus.  Furthermore, he offers no facts to suggest that DHS or ICE investigating agents or those who adopted the investigators' recommendation knew of or endorsed such purported discrimination.  Indeed, Mr. Aguilar admits that the DHS and ICE are "not liable for the discriminatory actions of the Arapahoe County Sheriff's deputies".  In the absence of evidence to establish circumstances giving rise to an inference of racial discrimination, Mr. Aguilar has  cannot establish a *prima facie* case.  There is no triable issue, and accordingly the claim must be dismissed.

## VI.  CONCLUSION

Based on the foregoing analysis, **IT IS THEREFORE ORDERED** that the Secretary's

Motion for Summary Judgment **(#41)** is **GRANTED.**  Mr. Aguilar's claim for race-based

discrimination is **DISMISSED** with prejudice, for failure to establish a *prima facie* claim.  All

other claims are **DISMISSED** with prejudice, due to Mr. Aguilar's voluntary abandonment of

them.  The Clerk shall close this case.

Dated this 15th day of October, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge